# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | |
|---|---|
| ASHLEY BLUE, | C/A 3:25-cv-00525-MOC-DCK |
| Plaintiff, v. | **FIRST AMENDED COMPLAINT** *(Jury trial demanded)* |
| AMAZON.COM, INC.; AMAZON.COM SERVICES, LLC; EDK TRADING, LTD; and JOHN DOE MANUFACTURER, | |
| Defendants. | |

Plaintiff amends her complaint under Rule 15(a), FRCP with the written consent of Amazon, the only defendant to appear in this matter. Plaintiff amends her complaint allegations as follows:

## Introduction:

1.     In November 2024, Plaintiff Ashley Blue was severely burned when rubbing alcohol was poured onto a portable fire pit sold by Defendants. When her boyfriend attempted to relight the fire pit, fuel vapors ignited and flashed back inside the rubbing alcohol container. The resulting pressure buildup inside the rubbing alcohol container caused a phenomenon known as flame jetting and sprayed burning rubbing alcohol onto Ashley.  The spraying of burning rubbing alcohol

onto Ashley resulted in severe burns to her body including her face, neck, chest and legs.

## Parties and Jurisdiction:

2. Plaintiff Ashley Blue is citizen and resident of Mecklenburg County, North Carolina.

3. Defendant Amazon.com, Inc. (AMZ) is a Delaware corporation with its principal place of business in the state of Washington and may be served with process through its registered agent Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

4. Defendant Amazon.com Services, LLC (AMZS) is a Delaware entity with its principal place of business in the state of Washington and may be served with process through its registered agent Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

5. Defendant AMZS operates Amazon's marketplace, seller services (like Fulfillment By Amazon [FBA], Amazon Warehousing and Distribution [AWD], and Amazon Global Logistics [AGL] and associated programs), and other logistics offerings.

6. Defendant AMZ is the parent corporation and Defendant AMZS is

2

its wholly owned subsidiary that is most often the contracting party in the Amazon Business Solutions Agreement and the Fulfillment by Amazon service terms which are described more fully below.

7. For sake of brevity, Defendants AMZ and AMZS are referred to collectively below as "Amazon."

8. Defendant EDK Trading, Ltd ("Roundfire"), upon information and belief is a British entity and a registered seller on Amazon.com.

9. Defendant John Doe Manufacturer ("Doe") is a fictitiously named defendant because plaintiff is not able to yet discern the identity of the manufacturer of the subject product of which she complains below.

10. Defendant Doe is the unknown entity responsible for the design and manufacture of the subject product and supplied the subject product to Roundfire for sale in partnership with Amazon.

11. Upon information and belief, Roundfire will be able to identify Doe such that plaintiff can amend her complaint and correctly identify Doe.

12. Defendant Doe is most likely a Chinese entity as the packaging for Roundfire's table-top fire pits like the subject product indicate that the fire pits are "Made in China."

13. Plaintiff and the Defendants are of different citizenship, and no

Defendant is a citizen of North Carolina.

14. The amount in controversy exceeds $75,000.00 exclusive of interest and costs.

15. This court has jurisdiction under 28 U.S.C. § 1332.

16. This court has personal jurisdiction over these Defendants based on the following in-state conduct:

    a. Amazon engages in substantial business activity in North Carolina by providing services to North Carolina residents; marketing to North Carolina citizens via an online marketplace; processing consumer transactions with Plaintiff and other North Carolina citizens; processing, servicing, and manufacturing goods used or consumed in North Carolina; operating fulfillment warehouses / centers in North Carolina; registering to do business in North Carolina (AMZS); and collecting and remitting North Carolina state sales tax on all product sales made to customers in the state of North Carolina;

    b. Amazon has also caused injury to plaintiff in North Carolina by acts and omissions committed outside the state of North Carolina that include targeting the distribution and sale of defectively designed, manufactured, and labeled fire pits to North Carolina which were used

and caused harm in North Carolina;

c.      Roundfire engages in substantial business activity in North Carolina by partnering with Amazon to provide products for sale, exclusively through Amazon, to North Carolina residents; marketing to North Carolina citizens via Amazon's online marketplace; packaging, labeling, and distributing consumer goods used or consumed in North Carolina; and selling products that it has targeted to the state of North Carolina;

d.      Roundfire has also caused injury to plaintiff in North Carolina by acts and omissions committed outside the state of North Carolina that include the distribution and sale of defectively designed, manufactured, and labeled fire pits to North Carolina which were used by, and caused harm to, the plaintiff in North Carolina;

e.      Defendant Doe engages in substantial business activity in North Carolina by partnering with Roundfire to manufacture products for sale to North Carolina residents; designing, packaging, labeling, and distributing consumer goods used or consumed in North Carolina; and selling products that it has a reasonable expectation will be used in the state of North Carolina; and

5

f.     Defendant Doe has also caused injury to plaintiff in North Carolina by acts and omissions committed outside the state of North Carolina that include the distribution and sale of defectively designed, manufactured, and labeled fire pits to North Carolina which were used by, and caused harm to, the plaintiff in North Carolina.

**Factual Allegations:**

17.    Roundfire labels, packages, markets, distributes, and sells portable table-top fire pits including the one at issue in this case ("subject fire pit").

18.    Roundfire sources the fire pits from Defendant Doe, a Chinese entity that designed and manufactured the subject fire pit and provided it to Roundfire under the terms of a supply agreement between the two.

19.    Amazon markets, sells, processes, warehouses, and / or ships Roundfire's products, including the subject fire pit.

20.    A picture of a container from one of the Roundfire fire pits is included below:



Roundfire Concrete Tabletop Fire Pit - Ethanol Fire Pit, Fire Bowl, Mini Personal Fireplace for Indoor & Garden - Bio Ethanol Fuel
Sold by: EdkBrandsUSA
$19.99
Buy it again     View your item

6

21. According to Roundfire, Amazon was its exclusive selling partner and the only place where a consumer could purchase one of Roundfire's fire pits.

22. Amazon provides an online marketplace through which it partners with vendors like Roundfire to sell products to consumers throughout the United States.

23. To the consumer, like Plaintiff, Amazon is the most critical part of the transaction – serving as the sole means of marketing, communication, distribution, returns, or customer service contact.

24. Roundfire and Amazon operate under the Amazon Services Business Solutions Agreement (BSA).

25. Roundfire, under the terms of its BSA, participated in Amazon's Fulfillment by Amazon program as well as its "Selling Partner" Application Programming Interface.

**Fulfillment by Amazon:**

26. Amazon operates the e-commerce website Amazon.com.

27. Amazon sells and distributes consumer products on Amazon.com both as a retailer and as a distributor for Amazon affiliates and its selling partners under its Fulfillment by Amazon ("FBA") program.

7

28.    Amazon's "Selling Partners" who participate in FBA deliver their products to Amazon's fulfillment centers rather than directly to consumers.

29.    Amazon refers to these fulfillment centers as its "distribution centers."  *See In the Matter of Amazon.com, Inc.*, CPSC Docket No. 21-2, Entry 142 at 8 n.5 (July 29, 2024).

30.    Once Amazon receives delivery of a product into its fulfillment center, Amazon stores the product until it is sold to a consumer.

31.    If a particular FBA product is not being held in an Amazon distribution center, Amazon does not allow that product to be purchased on Amazon.com.

32.    Amazon uses its own technology to track, move, commingle, and ship FBA products to customers.

33.    When a consumer orders an FBA product, Amazon locates the product in its warehouse, fulfills the order, and arranges shipment directly to the consumer.

34.    Amazon processes all customer payments for FBA products, deducts its fees, and remits balances to sellers.

8

35.    Amazon issues receipts, order confirmations, and purchase acknowledgments in Amazon's name for FBA transactions.

36.    Amazon applies and enforces its Fair Pricing Policy to the prices set by its selling partners, including the power to penalize or suspend sellers.

37.    Amazon requires its selling partners to agree that Amazon alone will provide customer service for FBA products.

38.    Amazon determines whether a customer will receive a refund, replacement, or adjustment for an FBA product.

39.    Amazon requires its selling partners to reimburse Amazon for refunds, replacements, and adjustments Amazon provides to consumers in Amazon's sole discretion.

40.    Amazon enforces reimbursement by reversing credits owed to its selling partners or charging its selling partner's credit card or bank account.

41.    If a customer returns a product, Amazon decides whether to dispose of the product, return it to inventory, or resell it through its Amazon Warehouse program.

9

42. Amazon contractually reserves the right to destroy, recycle, donate, or liquidate inventory stored in its fulfillment centers.

43. When Amazon disposes of inventory, title to the product transfers to Amazon or its designee, and Amazon may retain proceeds from disposal.

44. Amazon explicitly reserves the right to immediately dispose of inventory – and the selling partner is deemed to have consented to that disposal – that creates a safety, health, or liability risk to Amazon or its customers.

45. Amazon holds constructive title to products stored in its fulfillment centers through its contractual power to withhold distribution, seize, resell, or destroy inventory.

46. Amazon requires its selling partners to notify Amazon of any recalls or potential recalls and to cooperate with Amazon in executing recalls.

47. Amazon requires its selling partners to reimburse Amazon for all costs Amazon incurs in connection with recalls or safety alerts.

48. Amazon alone possesses the contact information of consumers who purchase FBA products and therefore controls recall notifications and all customer service interactions.

49. Consumers perceive they are purchasing FBA products from Amazon because Amazon controls the website, checkout process, packaging, returns, and customer service communications.

50. Many FBA sellers are foreign entities that are unknown to consumers and Amazon is the only visible participant in the seller / distribution chain.

51. Amazon profits from every FBA transaction through referral fees, fulfillment fees, and other charges.

52. Amazon is in the best position to monitor and regulate the safety of the products it sells and distributes because of its centralized control over listing, storage, fulfillment, pricing, payment, customer service, returns, and recalls.

53. Amazon's FBA participation agreement is an adhesion contract that unilaterally imposes these terms on sellers without negotiation including those that self-servingly relate to title of products maintained in Amazon's distribution centers.

11

54. Through these agreements and practices, Amazon exerts almost total control over FBA products in a manner indistinguishable from a traditional retailer, seller, or distributor.

55. Unsurprisingly, the Consumer Product Safety Commission ("CPSC") deems Amazon a distributor because it holds FBA products for sale and delivers them into ecommerce. *See In the Matter of Amazon.com, Inc.*, CPSC Docket No. 21-2, Entry 142 at 27 (July 29, 2024).

56. Specifically, the CPSC rejected "Amazon's argument that it is merely a 'third-party logistics provider'" as a misrepresentation of "the far-reaching control Amazon exercises in its Fulfilled by Amazon program." *Id.*

57. This conclusion stands to reason and is supported by the fact that "Amazon is a direct link in the chain of distribution, acting as a powerful intermediary between the third-party seller and the consumer." *Bolger v. Amazon.com, LLC*, 53 Cal. App. 5th 431, 438 (Cal. Ct. App. 2020).

**Amazon's substantial control over selling partners:**

58. Other provisions of the BSA, not just the FBA services, exemplify

12

the control exercised by Amazon over its selling partners, including Roundfire.

59. Through the BSA, Amazon required Roundfire to price goods sold on Amazon.com to be at least as favorable to Amazon site users as the most favorable terms offered by Roundfire elsewhere.

60. Amazon provided processing for all goods sold by Roundfire including the subject fire pit.

61. Amazon charged fees for its role in these transactions including for facilitating the shipment of the Roundfire fire pit at issue from China directly to Amazon fulfillment warehouses in California; facilitating and regulating the product information displayed at Amazon's ecommerce site; acting as the direct conduit between Plaintiff and Roundfire; processing payment for the subject fire pit; collection of and remission of North Carolina sales tax to the N.C. Department of Revenue for Plaintiff's purchase of the subject fire pit; and the shipment to Plaintiff of the Roundfire fire pit at issue.

62. Amazon also charged referral fees – a percentage of the sales price per item sold with its selling partners like Roundfire.

63. Amazon received a referral fee for the sale of the subject fire pit to

13

Plaintiff.

64.     Under the BSA, Amazon requires all communications between Roundfire and purchasers of Roundfire products, like Plaintiff, to go through Amazon.

65.     Under the BSA, Amazon exercises the right to control in its sole discretion the content, appearance, design, functionality and all other aspects of the product pages for Roundfire products, including the subject fire pit.

66.     Under the BSA, Amazon requires Roundfire to maintain liability insurance naming Amazon as an additional insured.

67.     Under the BSA, Amazon requires Roundfire to indemnify them for any liability arising from products sold through Amazon.com.

68.     Under the BSA, Amazon requires Roundfire to ensure and certify that its products comply with any applicable laws and notify Amazon of any public or private recall of their products.

69.     Under the BSA, Amazon exercises the power to require Roundfire to provide Amazon with any product certification or product standards certification applicable to Roundfire's products.

70.     By requiring that products sold on its site meet Amazon's

14

specifications or testing standards, Amazon explicitly assumes a duty to purchasers of such products to provide a product free of design and warning defects.

71.   Amazon Services' marketplace lists products sold by Amazon, Amazon affiliates, and its selling partners.

72.   Amazon Payments, Inc.—an Amazon affiliate referenced as "we" in the BSA—acts as Amazon's agent for processing payments, receiving and holding sales proceeds, and remitting funds.

73.   The BSA provides that Amazon will receive all sales proceeds on the seller's behalf and has exclusive rights to do so.

74.   Buyers, like plaintiff, satisfy their payment obligations to Amazon or its selling partners at the moment Amazon receives the sales proceeds.

75.   Amazon holds its selling partners' sales proceeds in an account with Amazon Payments and may commingle, invest, or otherwise use those funds before disbursement, with no interest owed to sellers.

76.   Amazon remits sales proceeds to its selling partners on a biweekly (or more frequent at Amazon's option) schedule after deducting Amazon's fees.

77.    The BSA prohibits Amazon's selling partners from receiving or requesting payments directly from customers and requires all buyer communications to occur through Amazon's tools.

78.    The BSA requires its selling partners to price products for Amazon users at least as favorably as any other sales channel, thereby advantaging sales through Amazon's marketplace.

79.    Amazon Fulfillment Services, Inc.—another affiliate—operates Amazon's distribution centers and facilitates the FBA storage, packaging, shipping, and delivery for Amazon's selling partners.

80.    At all times, Amazon is the only party a buyer encounters during a sales transaction because Amazon conducts the transaction, processes payment, holds the funds, and remits net proceeds to its selling partners.

81.    Amazon.com Services LLC is registered as a "retailer" for purposes of North Carolina's sales and use tax code.

82.    Under N.C. Gen. Stat. § 105-164.4J, Amazon is "considered the retailer of each marketplace-facilitated sale it makes . . . ."

16

83.    Amazon is required to collect and remit N.C. sales tax for every consumer product transaction occurring in N.C., including Plaintiff's purchase of the subject product.

## Amazon's knowledge of the hazard:

84.    Amazon independently monitors safety recalls and other safety issues related to products sold on its online marketplace.

85.    Amazon has a Product Assurance, Risk & Safety team that works to identify, investigate, and act on safety risks.

86.    This team monitors customer complaints, government recall notices, and third-party reports.

87.    Amazon retains the unilateral right to immediately dispose of products that create a safety, health, or liability risk to Amazon or its customers.

88.    Amazon also requires its selling partners to provide extensive product information including, but not limited to a description of the product; digitized images of the product; any text, disclaimers, warnings, notices, labels, warranties, or other content necessary for the safe use of the product; brand; model; a delimited list of technical specifications; identify accessories related to the product that are

available in Amazon's catalog; and any other information reasonably requested by us demonstrating the safety and authenticity of the product.

89.   Amazon requires and is afforded a reasonable opportunity to inspect products it makes available for sale in such a manner that Amazon would (or should) be aware of the inadequate design of products it makes available for sale.

90.   Similarly, Amazon requires and is afforded a reasonable opportunity to inspect products it makes available for sale in such a manner that Amazon would (or should) be aware of any inadequate warnings or instructions accompanying products it makes available for sale.

91.   By exercising such oversight and control, Amazon assumes a duty to its customers to make available for sale only adequately designed products.

92.   By exercising such oversight and control, Amazon assumes a duty to its customers to provide adequate warnings and instructions with products.

18

93. Prior to providing the subject fire pit to the Plaintiff, Amazon was aware of Australia's Consumer Good (Decorative Alcohol Fueled Devices) Safety Standard (5 July 2017) that provides that decorative alcohol fueled devices (including table-top fire pits) supplied after 15 October 2017 in Australia must be supplied with:

    a.    a fuel container that incorporates a flame arrester; or

    b.    an automatic fuel pump system for the device.

94. Further the Australian Standard requires warnings that include "Filling an alcohol fueled device while lit has caused severe burns. When refilling only use containers with a flame arrestor."

95. Prior to providing the subject fire pit to Plaintiff, Amazon was aware of Health Canada's October 9, 2019 information update on flame jetting that provides in part:

> "Health Canada is informing consumers of the serious fire and burn risks associated with flame jetting occurrences that may result from the use of certain containers of pourable alcohol-based fuels and certain firepots that use those fuels. Fire pots (also referred to as fireburners, portable fireplaces, fire bowls, patio burners, flamepots, firelights, or table-top fire pits) are portable decorative lighting accents that support open flame burning…Flame jetting incidents often involve multiple victims and, in Canada, have resulted in fatalities and very serious injuries…Do not use pourable fuel containers without a flame arrestor."

19

96.     Prior to providing the subject fire pit to the plaintiff's family, Amazon was aware of ASTM F3363-19 which applies to the subject fire pit and provides in part: "When pouring flammable liquids from closed neck containers, use flame mitigation devices to reduce the risk of flame jetting."

97.     In 2021, Amazon was sued in the case of *Renee Farell v. Amazon* and in that case the plaintiff claimed to have been severely burned when utilizing a table-top fire place.

98.     In 2022, Amazon was sued in the case of *Jelinek & Garcia v. Amazon* and in that case the plaintiffs claimed to have been burned when fueling a fire pit and alleged that the fuel container at issue was dangerous because it lacked a flame arrester (sic).

99.     In 2022, Amazon was sued in the case of *Kalman & Rivka Benjamin v. Amazon* and in that case the plaintiff alleged to be burned when using a table-top fire pit and the plaintiff alleged that Amazon knew or should have known of the risk of flame jetting explosions occurring because fuel vapor trails igniting from heated fire pits and that Amazon knew of should have known about the dangers of fueling fire pits from containers without flame arrestors.

20

100. Prior to providing the subject fire pit to Plaintiff, Amazon was aware of the CPSC's January 17, 2023 release on flame mitigation devices that provides in part:

> Flame mitigation devices, such as flame arrestors, protect against flame jetting and container rupturing. Flame jetting is a phenomenon where an external ignition source- such as an open flame-causes a sudden ignition of fuel within a container and forcefully expels burning vapor and liquid from the mouth of the container, resulting in a blowtorch-like effect…Flame mitigation devices will be required on containers sold pre-filled with liquid fireplace fuels.

101. In February 2023, Amazon was sued in the case of *Samantha Loving v. Amazon* and in that case the Plaintiffs claimed to have been severely burned when using a table-top fire pit.

102. In July 2023, Amazon was sued in the case of *Christine Farina v. Amazon* and in that case the Plaintiff claimed to have suffered severe burns when using a table-top fire pit.

103. Prior to providing the subject fire pit to Plaintiff, Amazon was aware of Health Canada's September 28, 2023, information update on Flikfire Fire Pots that provides in part:

> "The portable firepots also do not have the required labelling according to the ASTM F3363-19 Standard Specifications for Unvented Liquid Gel/Fuel Burning Portable Devices. These labelling requirements are necessary to inform consumers about fire or burn hazards, including flame jetting….The

21

lack of appropriate labelling and hazard information could contribute to a flame jetting incident and/or unintentional exposure to the product and lead to serious illness, injury or death."

104. The subject fire pit does not comply with the required labeling according to the ASTM F3363-19 standard.

105. Prior to the sale of the subject fire pit, Amazon knew that fuel containers that lack flame mitigation devices are susceptible to flashback ignitions and flame jetting.

106. Despite this, Amazon actively encouraged consumers, like Plaintiff, to use rubbing alcohol (which does not come with a flame arrestor) as a fuel source for the subject fire pit despite knowledge of the CPSC's January 17, 2023, release on flame mitigation devices.

107. One of the ways Amazon does this is via its algorithm whereby the product pages for the fire pit links to "Frequently Purchased Together" or "Click to Shop Refills" where purchasers can link to rubbing alcohol or other fuel sources that do not contain flame arrestors.

### Subject fire pit and event:

108. On November 30, 2023, the Plaintiff placed order number 112-1503780-9508226 through Amazon's online marketplace, Amazon.com, for the subject fire pit.

22

109. Plaintiff received purchase confirmation emails from Amazon regarding the transaction.

110. Plaintiff received shipping confirmation emails from Amazon regarding the shipment of the product.

111. Plaintiff was able to access information about the transaction and shipping through her account with Amazon at her Your Orders pages.

112. The product was in the possession of Amazon at one of its fulfillment centers and was then delivered to plaintiff by Amazon in Amazon packaging.

113. The subject table-top fire pit poses a risk of serious fire and burn injuries, including death, due to flame jetting associated with the use of certain pourable fuels.

114. In providing the subject fire pit, Amazon was aware or should have been aware of the defects in, and the risks posed by, the subject fire pit.

115. At all times, Defendants Doe and Roundfire were, or should have been, aware of the defects in, and the risks posed by, the subject product.

116. Prior to the purchase of the subject fire pit, none of the

Defendants provided adequate warnings or instructions either on the subject product's Amazon listing or with the product itself.

117.  Once the subject fire pit arrived, Plaintiff and her boyfriend used the fire pit in a foreseeable manner.

118.  On November 16, 2024, Plaintiff and her boyfriend were playing cards by the fire pit.

119.  At some point, the fire appeared to go out, and Plaintiff's boyfriend went to refuel it with rubbing alcohol.

120.  As Plaintiff's boyfriend poured the rubbing alcohol into the fire pit, the alcohol ignited and flashed back into the rubbing alcohol container.

121.  The resulting pressure buildup inside the rubbing alcohol container resulted in a spraying of ignited rubbing alcohol out of container and onto Plaintiff who was severely burned.

122.  The spraying of burning liquid alcohol onto Plaintiff resulted in catastrophic burns over a large portion of her body.

123.  The subject fire pit designed, manufactured, packaged, labeled, and / or sold by the Defendants was defective and unsafe for foreseeable purposes at the time it left control of the Defendants in that the fire pit

was not sold with a fuel container containing a flame arrestor, a necessary safety device that would have prevented the ignition of the liquid fuel and the resulting injuries.

124. The subject fire pit sold by Defendants was also defective and unsafe for foreseeable purposes at the time it left control of the Defendants in that the fire pit's product description, accompanying warnings, and accompanying instructions were not only inadequate but dangerous, encouraging the user to use rubbing alcohol as a fuel source without instructing the consumer to only use fuel sources containing flame arrestors, and without warning the consumer of the danger of a flashback flame jetting event.

125. Prior to the sale of the subject fire pit, the Defendants knew or should have known that fuel containers that lack flame mitigation devices are susceptible to flashback ignitions and flame jetting.

126. Prior to the sale of the subject fire pit, Defendants sold bio ethanol fuel products for use in table-top fire pits that contain flame arrestors designed to prevent the very injuries that Plaintiff sustained. The flame arrestor from one of these products is pictured below:



127.  Prior to sale of the subject fire pit, there was a wealth of
information available in the public domain about flame mitigation
devices, patents for flame mitigation devices from the 1800's, consumer
safety articles discussing the need for flame arrestors, the catastrophic
burn injuries that result from preventable fire pit flame jetting events,
and the relatively inexpensive alternative designs that can prevent
injuries such as those suffered by Plaintiff.  *See, e.g.,*
www.notyourturntoburn.com.

128.  Amazon was aware of other lawsuits and other consumers who
were injured by similar products such as the Colsen-branded table-top
fire pit with knowledge of at least 19 reported burn injuries to the
Consumer Product Safety Commission involving flame jetting which is
what injured Plaintiff.

129.  Defendants were either aware of the information listed above or

turned a blind eye toward and ignored this important information about the safety of the product they sold Plaintiff.

130. With this safety information readily available, Defendants recklessly chose to sell the subject fire pit without a fuel container with a flame mitigation device and without adequate warnings knowing someone like Plaintiff would be catastrophically injured when around someone using the subject fire pit in a foreseeable manner.

131. As a direct and proximate result of the acts and omissions of the Defendants, Plaintiff suffered severe and catastrophic burns from the burning alcohol.

132. These injuries required reasonable and necessary medical treatment at considerable expense and will require future medical care.

133. As a result of these injuries, Plaintiff suffered extensive physical and mental pain and suffering.

## FOR A FIRST CAUSE OF ACTION
*(Product Liability - Negligence – All Defendants)*

134. Plaintiff fully incorporates all prior paragraphs.

135. Defendant Doe is a "manufacturer" as that term is defined in N.C. Gen. Stat. § 99B-1(2) with respect to the subject fire pit.

136. EDK Trading, Ltd. was a "seller" as that term is defined in N.C. Gen.

27

Stat. § 99B-1(4) with respect to the subject fire pit

137.  Amazon was a "seller" as that term is defined in N.C. Gen. Stat. § 99B-1(4) with respect to the subject fire pit.

## Negligent Product Design and Manufacture

138.  At all relevant times, Defendant Doe designed, manufactured, and supplied the subject fire pit to Defendant Roundfire in the regular course of business.

139.  At the time Defendant Doe designed, manufactured, and supplied the subject fire pit, it knew or should have known that the fire pit, when used in a foreseeable manner, posed a substantial risk of catastrophic burn injuries due to flame jetting associated with pouring fuels such as rubbing alcohol.

140.  At the time Defendant Doe designed, manufactured, and supplied the subject fire pit, it was aware or should have been aware that:

a.  Flame arrestors were readily available, feasible safety devices that prevent ignition of fuel vapors inside pouring containers;

b.  Flashback ignition and flame jetting had caused severe injuries to other users of similar fire pits;

c.  Safer alternative designs and adequate warnings would

28

have reduced or eliminated the unreasonable risk of harm.

141. The subject fire pit was defective in design and manufacture in that:

a. It was not sold with a fuel container containing a flame mitigation device or flame arrestor to prevent flashback ignition;

b. It failed to adequately warn consumers of the foreseeable danger of flashback flame jetting when using common fuels such as rubbing alcohol;

c. It encouraged the use of rubbing alcohol as fuel without instructing users to employ fuel containers incorporating flame mitigation devices.

142. At all relevant times, Defendant Doe owed a duty to exercise due care in the design and manufacture of the subject fire pit to avoid creating an unreasonable risk of harm to foreseeable users, including Plaintiff.

143. Defendant Doe breached this duty by:

a. Designing and selling a fire pit without readily available and economically feasible flame arrestors or similar safety features;

b. Failing to provide adequate warnings and instructions concerning the hazards of pouring rubbing alcohol and the risk of flame

jetting;

c.  Failing to exercise reasonable care in testing and inspecting the product before making it available for sale and for consumer review programs;

d.  Selecting and distributing the product to customers without verifying that the fire pit was reasonably safe for its intended and foreseeable uses;

e.  Failing to discover the defective condition of the subject product despite being afforded a reasonable opportunity to inspect the product in a manner that would have made its dangerous condition known to defendants; and

f.  Such other acts or omissions as may be revealed in discovery.

**Failure to provide adequate warnings or instructions**

144.  At all relevant times, Defendants Roundfire and Amazon were responsible for the product information displayed on the subject fire pit's product page on Amazon.com as well as the labeling, packaging, and instructions for use that accompanied the product.

145.  At all relevant times, Amazon was the apparent agent of Defendant Roundfire by virtue of its acting as the only conduit between

30

the subject product and Plaintiff.

146. According to Roundfire, Amazon was the exclusive retailer or distributor of the subject fire pit.

147. Amazon.com was the only place a person could purchase the subject fire pit.

148. All communications and transactions related to Plaintiff's purchase of the subject product were solely between Plaintiff and Amazon.

149. At all relevant times, Plaintiff was under the reasonable belief that she purchased the subject fire pit from Amazon.

150. At all relevant times, Amazon held itself out as the seller of the subject fire pit.

151. At all relevant times, Plaintiff relied upon her reasonable belief that Amazon was the seller of the subject fire pit.

152. All communications and transactions related to Plaintiff's purchase of the subject product were solely between Plaintiff and Amazon.

153. At the time Defendants Amazon and Roundfire marketed, distributed, and sold the subject fire pit, they knew or should have

known that the subject fire pit, when used in a foreseeable manner, posed a substantial risk of catastrophic burn injuries due to flame jetting associated with pouring fuels such as rubbing alcohol.

154. At the time Defendants Amazon and Roundfire marketed, distributed, and sold the subject fire pit, they were aware or should have been aware that:

    a. Flame arrestors were readily available, feasible safety devices that prevent ignition of fuel vapors inside pouring containers;

    b. Flashback ignition and flame jetting had caused severe injuries to other users of similar fire pits;

    c. Safer alternative designs and adequate warnings would have reduced or eliminated the unreasonable risk of harm.

155. The subject fire pit's product information, packaging, labeling, warnings, and instructions were inadequate and defective in that:

    a. They failed to adequately warn consumers of the foreseeable danger of flashback flame jetting when using common fuels such as rubbing alcohol;

    b. They failed to adequately warn consumers not to use common fuel containers that did not utilize or incorporate flame arrestors; and

32

c.     Worse, they actually encouraged the use of rubbing alcohol as fuel without any instruction regarding the use of fuel containers incorporating flame mitigation devices.

156.  At all relevant times, Defendants Amazon and Roundfire owed a duty to exercise due care in the marketing, distribution, and sale of the subject fire pit to avoid creating an unreasonable risk of harm to foreseeable users, including Plaintiff.

157.  Defendants Amazon and Roundfire breached this duty by:

a.     Distributing and selling a fire pit without readily available and economically feasible flame arrestors or similar safety features without providing adequate instruction about the products lack of these safety features;

b.     Failing to provide adequate warnings and instructions concerning the hazards of pouring rubbing alcohol and the risk of flame jetting;

c.     Failing to exercise reasonable care in testing and inspecting the product before making it available for sale and for consumer review programs;

d.     Selecting and distributing the product to customers without

33

verifying that the fire pit was reasonably safe for its intended and foreseeable uses;

e.     Failing to discover the defective condition of the subject product or adequately warn about the unreasonably dangerous nature of the product despite prior knowledge of the hazard and being afforded a reasonable opportunity to inspect the product in a manner that would have made its dangerous condition obvious to the defendants; and

f.     Such other acts or omissions as may be revealed in discovery

158.  At all relevant times, Amazon had the opportunity to inspect the subject fire pits that were stored in its distribution centers and either failed to do so or allowed them to be sold even with Amazon's knowledge of their dangerous nature.

159.  The manufacturer of the subject fire pit, Defendant Doe, a Chinese entity, is not subject to the jurisdiction of the court of North Carolina.

160.  Defendant Roundfire, the entity partially responsible for the packaging, labeling, warnings, and instructions attending the product has been judicially declared insolvent in the United Kingdom.

161.  At all relevant times, Plaintiff used the subject fire pit in a

reasonably foreseeable manner.

162.   Plaintiff never modified or altered the product.

163.   Plaintiff used the subject fire pit as it was intended to be used by Defendants.

164.   The acts and omissions of Amazon described above were reckless, wanton, and willful given that Amazon had prior, direct knowledge of the substantial risk of harm associated with table-top fire pits and failed to prohibit the sale of these products on its website.

165.   As a direct and proximate result of Defendants' acts and omissions, the subject fire pit caused severe and catastrophic burns to Plaintiff, resulting in past and future medical expenses, past and future lost wages, permanent injury, permanent scarring and disfigurement, loss of enjoyment of life, and past and future pain and suffering.

## FOR A SECOND CAUSE OF ACTION
*(Breach of Express and Implied Warranties – all Defendants)*

166.   Plaintiff fully incorporates all prior paragraphs.

167.   At the time Plaintiff purchased and used the subject fire pit, Defendants, individually or through their agents and explicit statements made on its online marketplace and the product page for the subject product, expressly and impliedly warranted that the fire pit:

35

a. Was of merchantable quality;

b. Was safe and fit for its intended and ordinary purposes;

c. Was free from defects in design, manufacture, and warning;

d. Was appropriate for use as a table-top fire pit; and

e. Was safe to use with ethanol fuels that were not in containers with flame arrestors; and

f. Suggested that purchasers of the subject fire pit also purchase fuel sources that did not come in containers with flame arrestors.

168. Given its place as the world's largest online retailer, Plaintiff reasonably relied on Amazon's skill, judgment, and warranties in selecting and using the subject fire pit and reasonably relied on the product information supplied by Defendants Doe and Roundfire.

169. The subject fire pit did not conform to the defendants' express and implied warranties because it was unreasonably dangerous, lacked adequate warnings, and failed to incorporate feasible and necessary safety features.

170. As a direct and proximate result of Defendants' breach of express and implied warranties, Plaintiff sustained severe burns and resulting

damages including past and future medical expenses, past and future lost wages, permanent injury, permanent scarring and disfigurement, loss of enjoyment of life, and past and future pain and suffering.

## FOR A THIRD CAUSE OF ACTION
*(Negligence – Defendant Amazon)*

171. Plaintiff incorporates all prior paragraphs.

172. Despite its status as the world's largest online retailer and its extensive control over its selling partners, Amazon contends that it is not a seller of products sold under BSAs and FBA arrangements with its selling partners.

173. Even if that contention were true (it is not), Amazon, by virtue of its relationship with Plaintiff as its frequent customer and its extensive efforts to monitor safety and compliance for products sold on Amazon.com, owed Plaintiff duties that arise from Plaintiff interactions with Amazon and do not depend on the existence of a sale.

174. As set forth above, Amazon owed Plaintiff a duty to exercise that degree of care which a reasonable and prudent person would use under the same or similar circumstances to protect himself and others from injury.

175. As set forth above, Amazon has also assumed certain duties

37

related to Plaintiff that flow from its retention of certain rights of regulation, product safety, and compliance within the BSA with Roundfire.

176. In all respects, Plaintiff reasonably relied on Amazon as the entity selling her the subject fire pit regardless whether Amazon was a legal seller or not.

177. Amazon breached that duty owed Plaintiff and was negligent in the following ways:

a. Amazon possessed direct and extensive knowledge from prior lawsuits and other notice of injury that the class of products to which the subject fire pit belongs posed a substantial risk of injury and harm;

b. Amazon possessed direct knowledge that there were engineering or other industry standards that applied to the class of products to which the subject fire pit belonged that required the use of flame arrestors;

c. Since 2021, Amazon has utilized an entire team (PARS - Product Assurance, Risk, and Security) devoted to identifying product safety hazards and ensuring that products purchased on Amazon.com

38

are safe and meet compliance standards;

d.  The class of products to which the subject fire pit belongs are extremely dangerous and have been associated with multiple deaths and over 60 or more injuries since 2019;

e.  Amazon is either directly aware of these or substantially similar injuries associated with the class of products;

f.  Amazon has had this awareness since well before Plaintiff purchased the subject fire pit from Amazon;

g.  The Consumer Product Safety Commission communicated to Amazon the reports of injuries and hazards associated with this class of product prior to Plaintiff's purchase of the subject fire pit;

h.  The Roundfire subject fire pit is substantially similar to those designs associated with prior injuries or claims of which Amazon is aware;

i.  Despite this knowledge Amazon allowed Plaintiff to purchase the subject fire pit without alerting her on Amazon's product listing of the dangerous propensity of the product, the risk of flame jetting, and the need to utilize an appropriate fuel source and container;

j.  When Plaintiff accessed her Amazon account to purchase the

39

subject product, Amazon displayed options for fuel sources and other products "Frequently Bought Together" that linked to ethanol fuel products that were unsafe for use with the subject fire pit as set forth more fully above;

k.     When Amazon shipped the subject fire pit to Plaintiff it failed to alert her to the dangerous propensity of the product, the risk of flame jetting, and the need to utilize an appropriate fuel source and container;

l.     Despite its knowledge of the ASTM standard governing this class of product, Amazon allowed Plaintiff to purchase the subject fire pit despite its knowledge that the Roundfire fire pit did not comply with the certification standards governing these products;

m.     Nor did Amazon ever alert Plaintiff to its own knowledge that the subject fire pit did not meet certification standards, robbing her of this important safety information;

n.     Amazon has later admitted in an email sent to over 20,000 customers that Roundfire's fire pit was non-compliant with ASTM certification standards; and

o.     Amazon knew, or had the ability to know, the subject fire pit

40

did not comply before it allowed Plaintiff to purchase it without that information.

178. Plaintiff, unaware of the substantial risk of harm associated with the product, bought it, used it, and was injured in the same way others have been injured by it.

179. If Amazon had notified Plaintiff of the hazards and dangers associated with the use of the subject fire pit, she would not have purchased or used it.

180. Amazon breached its duty to exercise that degree of care which a reasonable and prudent person would use under the same or similar circumstances to protect Plaintiff from injury.

181. These breaches were the direct and proximate cause of plaintiff's significant burn injuries.

182. Because Amazon knowingly acted or failed to act as set forth above, these acts and omissions were reckless, willful, wanton and display a conscious disregard of and indifference to the rights of Plaintiff and other Amazon consumers.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays unto the Court for relief as

follows:

1.      That a jury be impaneled to try all issues of fact;

2.      That Plaintiff have and recover of Defendants, jointly and severally, such sum as a jury shall assess for compensatory damages in an amount exceeding Twenty-Five Thousand and no/100 ($25,000.00) Dollars;

3.      That punitive damages be awarded as permitted under N.C. Gen. Stat. § 1D-15 based on Defendants' willful and wanton conduct;

4.      That the costs of this action, including prejudgment interest, be taxed to Defendants; and

5.      For such other and further relief as the Court deems just and proper.

Signature page below.

Respectfully submitted this 18th day of September, 2025.

**RICHARDSON THOMAS, LLC**

By:__*s/Grace Babcock*_____
Grace M. Babcock (NC Bar: 60373)
1513 Hampton Street, First Floor
Columbia, SC 29201
T: (803) 281-8150
F: (803) 632-8263
grace@richardsonthomas.com

Chris Moore (admitted *pro hac vice*)
383 W. Cheves Street
Florence, SC 29501
T: 803.300.1517
chris@richardsonthomas.com

***Attorney for the Plaintiff***